Pursuant to article IV, section 10 of the Florida Constitution and section 101.161, Florida Statutes (1993), the Attorney General has petitioned this Court for an advisory opinion regarding the validity of an initiative petition. In response to the Attorney General's request, we issued an order permitting interested parties to file briefs, and we heard oral arguments on the validity of the proposed amendment. We have jurisdiction under article V, section 3(b)(10) of the Florida Constitution.
The initiative petition was proposed by a group known as Proposition for Limited Casinos, Inc. The petition seeks to amend Article X, section 7 of the Florida Constitution.[1] The full text of the petition reads as follows:
 TITLE: LIMITED CASINOS
 SUMMARY: Authorizing a limited number of gaming casinos in Broward, Dade, Duval, Escambia, Hillsborough, Lee, Orange, Palm Beach and Pinellas Counties, with two in Miami Beach; and limited-size casinos with existing and operating pari-mutuel facilities; and if authorized by the legislature up to five limited-size riverboat casinos in the remaining counties, but only one per county. Mandating implementation by the legislature. Effective upon adoption, but prohibiting casino gaming until July 1, 1995.
 Section 1. Section 7 of Article X is amended to revise its title to read "Lotteries and Limited Casinos," and to designate the existing text as subsection "(a)".
 Section 2. Subsection 7(b) of Article X is created to read: *Page 73 
 The operation of a limited number of state regulated, privately owned gaming casinos is authorized, but only:
 (1) at one facility each to be established within the present boundary of Duval, Escambia, Hillsborough, Lee, Orange, Palm Beach and Pinellas Counties; and
 (2) at two facilities to be established within the present boundary of Broward County; and
 (3) at three facilities to be established within the present boundary of Dade County, two of which shall be within the present boundary of the city of Miami Beach — with one of those two being in the South Pointe Redevelopment Area — and the third facility shall be outside the present boundary of the City of Miami Beach; and
 (4) with each pari-mutuel facility which has been authorized by law as of the effective date of this amendment and which has conducted a pari-mutuel meet in each of the two immediately preceding twelve month periods; provided that no casino located with a pari-mutuel facility shall have a gaming area in excess of 75,000 square feet; and
 (5) at not more than five riverboat casino facilities having a gaming area not in excess of 40,000 square feet, as the legislature may approve within the present boundaries of counties not identified in paragraph (1), (2) and (3); provided that the legislature shall not approve more than one riverboat casino in any one county. Section 3. By general law, the legislature shall implement this section, including legislation to regulate casinos, to tax casinos, and to license casinos to pari-mutuel permit holders and at the other authorized facilities.
 Section 4. This amendment shall take effect on the date approved by the electorate; provided however, that no casino gaming shall be authorized to operate in the state until July 1, 1995.
Our advisory opinion is limited to determining whether the proposed amendment complies with article XI, section 3 of the Florida Constitution and section 101.161, Florida Statutes (1993).
Article XI, section 3 provides that a proposed amendment "shall embrace but one subject and matter directly connected therewith." This Court has held that to satisfy the single-subject requirement, the proposed amendment must have a "natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test."Fine v. Firestone, 448 So.2d 984, 990 (Fla. 1984) (quotingCity of Coral Gables v. Gray, 154 Fla. 881, 884, 19 So.2d 318, 320 (1944)). In other words, a proposed amendment must manifest a "logical and natural oneness of purpose." Fine v. Firestone,
448 So.2d at 990. A primary reason for the single-subject restriction is to prevent "logrolling," a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed. Advisory Opinion to theAttorney General — Limited Marine Net Fishing, 620 So.2d 997
(Fla. 1993). Also, to meet the single-subject requirement, no single proposal can substantially alter or perform the functions of multiple aspects of government. Advisory Opinion to theAttorney General — Save Our Everglades, 636 So.2d 1336 (Fla. 1994).
The Attorney General and opponents of the petition argue that the proposed amendment constitutes logrolling. We disagree. The sole subject of the proposed amendment is to authorize privately-owned casinos in Florida. The proposal does not combine subjects which are dissimilar so as to require voters to accept one proposition they might not support in order to vote for one they favor. Although the petition contains details pertaining to the number, size, location, and type of facilities, we find that such details only serve to provide the scope and implementation of the initiative proposal. These features properly constitute matters directly and logically connected to the subject of the amendment.
We also reject the opponents' argument that the proposed amendment would perform functions of local governments including local zoning, as well as the functions *Page 74 
of local governments and the executive branch in the areas of planning, land use and environmental regulation. Nothing in the petition usurps, interferes with, or affects, the powers and authority of the executive branch of government or of local governments to integrate casinos into existing governmental policies for planning, zoning, land use, or environmental considerations. There is no directive in the petition for an override of local or state environmental, land use, or regulatory policies.
Opponents further argue that the petition encroaches upon the taxation, regulation, and licensing powers of the legislature because of the "legislature shall implement" language contained in the petition. We find that this language is incidental and reasonably necessary to effectuate the purpose of the proposed amendment and does not violate the single-subject requirement.See Advisory Opinion to the Attorney General English — TheOfficial Language of Florida, 520 So.2d 11 (Fla. 1988) (provision for legislative implementation directly connected to establishing English as official state language); FloridiansAgainst Casino Takeover v. Let's Help Florida, 363 So.2d 337
(Fla. 1978) (provision requiring that anticipated tax revenues be applied to education and law enforcement properly served to implement the single-subject of casino gambling in Dade and Broward counties).
Opponents of the petition also pose a myriad of speculative scenarios in which the proposed amendment might usurp the functions of the three branches of government. For example, they suggest that the petition would perform a judicial function in that it might cut off a judicial remedy for those citizens whose property might be adversely affected by the authorized casinos. They also argue that the petition would impact the authority of the executive and legislative branches because it might authorize and compel negotiations for casinos on Indian reservations. In addition, opponents argue that the petition could impact upon other articles of the Florida Constitution. They suggest, for example, that the proposed amendment would impact article III, section 10 of the Florida Constitution which provides that special laws may be passed only after published notice except where a special law is subject to approval by vote of the electors of the area affected.
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. However, this Court has held that a proposed amendment can meet the single-subject requirement even though it affects multiple branches of government. Advisory Opinion to the Attorney General — LimitedPolitical Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla. 1991). Further, this Court has held that the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment. English — The Official Language of Florida, 520 So.2d at 12, 13. All of the scenarios raised by the opponents relating to possible impacts on other branches of government or on the constitution are premature speculation. In English — TheOfficial Language of Florida we stated "[i]t may be that, if passed, the amendment could have broad ramifications. Yet, on its face it deals with only one subject." Id. at 13. Likewise, we find that the Limited Casinos amendment meets the single-subject requirement.
The proposed amendment must also satisfy the requirements of section 101.161(1), Florida Statutes (1993). Section 101.161(1) provides that the substance of the amendment "shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of." This Court has construed section 101.161(1) to mean that the ballot title and summary for a proposed amendment must state the chief purpose of the measure in clear and unambiguous language. Limited Political Terms inCertain Elective Offices, 592 So.2d at 228. This is so that the voter is put on fair notice of the content of the proposed amendment to enable the casting of an intelligent and informed vote. Id. However, we have held that the ballot information need not explain *Page 75 
every detail or ramification of the proposed amendment. Save OurEverglades, 636 So.2d at 1341 (citing Carroll v. Firestone,497 So.2d 1204, 1206 (Fla. 1986)).
Opponents of the petition argue that the ballot title, Limited Casinos, is misleading in that the word "limited" is subjective and is likely to be perceived by voters as limiting certain types of gambling, or limiting casinos to a few in number, or limiting the number of casinos already in the state. This Court has always interpreted section 101.161(1) to mean that the ballot title and summary must be read together in determining if the ballot information properly informs the voter. The ballot summary makes it clear that the word "limited" refers to the number of casinos that will be authorized in various locations as well as to the square footage of the casinos to be located with existing pari-mutuel facilities. We are confident that the public knows that casino gambling is now prohibited and will understand that the effect of the amendment would be to permit casino gambling subject to the limitations contained therein.
Opponents of the proposed amendment also argue that the ballot summary is misleading because the summary fails to reveal the number of casinos authorized, that it does not disclose the location or number of existing pari-mutuel facilities, and that it fails to mention that one casino must be placed in the South Pointe Redevelopment Area of Miami Beach. Further, they argue that the summary fails to provide a definition for riverboat casinos and pari-mutuel facilities.
We cannot accept the contention that the omission of certain details could reasonably be expected to mislead the voters. The seventy-five word limit placed on the ballot summary as required by statute does not lend itself to an explanation of all of a proposed amendment's details. Further, many of the details in the instant case could or would not be known unless and until the amendment is adopted and implemented. We find that the ballot summary for the Limited Casinos initiative petition provides the electors with sufficient information to make an informed decision on how to cast their ballots.
The chief purpose of the proposed amendment is to authorize limited casino gaming in the state of Florida. The petition seeks to do this by authorizing a specified number of gaming casinos in various locales and by authorizing limited-size casinos with existing and operating pari-mutuel facilities. We find that the ballot title and summary clearly and unambiguously describe to the voter the purpose and substance of the amendment.
We do not pass judgment upon the wisdom or merit of the proposed initiative amendment. However, we hold that it meets the requirements of article XI, section 3 of the Florida Constitution and section 101.161, Florida Statutes (1993).
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
GRIMES, C.J., dissents with an opinion.
[1] Article X, section 7 provides:
Lotteries. — Lotteries, other than the types of pari-mutuel pools authorized by law as of the effective date of this constitution, are hereby prohibited in this state.