CORRECTED OPINION

SHAW, Justice.
The Attorney General petitioned this Court for advisory opinions on the validity of three initiative petitions circulated by a group known as Save Our Everglades Committee (SOE). In response to the Attorney General’s request, we issued orders permitting interested parties to file briefs and heard oral argument on the validity of the proposed amendments. We have consolidated the three petitions for review in this opinion but will address the three proposals separately. We have jurisdiction. Art. IV, § 10; art. V, § 3(b)(10), Fla. Const.
Subsequent to the Attorney General’s petitions, Steve Williams, Okeelanta Corporation, Atlantic Sugar Association, Inc., and Osceola *1127 Farms Company filed a declaratory judgment action against SOE, which we ordered transferred to this Court. SOE filed a motion to dismiss and Williams et al. filed a motion for summary judgment. Both parties filed responsive motions. We grant SOE’s motion to dismiss, deny plaintiffs’ motion for summary judgment and hold that the signatures obtained on the unified single form petition are valid.
We also find that the three initiative petitions entitled “Fee on Everglades Sugar Production” (Fee), “Everglades Trust Fund” (Trust Fund), and “Responsibility for Paying Costs of Water Pollution Abatement in the Everglades” (Responsibility) comply with the single-subject requirement in article XI, section 3, of the Florida Constitution and that the ballot titles and summaries comply with section 101.161, Florida Statutes (1995). Consequently, we approve the proposed amendments for placement on the ballot.
Our analysis of each proposed amendment is limited to determining two issues: (1) whether the proposed amendment violates the single-subject requirement in article XI, section 3, of the Florida Constitution, which states that an amendment proposed by initiative “shall embrace but one subject and matter directly connected therewith;” and (2) whether the ballot title and summary are misleading and thus violate section 101.161(1), Florida Statutes (1995).[1]
The single-subject limitation is a rule of restraint designed to guard against unbridled cataclysmic changes in Florida’s organic law, and “ ‘logrolling,’ a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.” In re Advisory Opinion to the Attorney General — Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). To comply with the single-subject requirement, the proposed amendment must manifest a “logical and natural oneness of purpose.” Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984).
The proposed amendment must also comply with the requirements of section 101.161. “[Ejection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure.” Askew v. Firestone, 421 So.2d 151, 154-55 (Fla.1982). This is to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot. Advisory Opinion to the Attorney General re Stop Early Release of Prisoners, 661 So.2d 1204, 1206 (Fla.1995). We now turn to each of the subject initiatives.
I. PROPOSED FEE AMENDMENT
The Fee proposal seeks to amend article VII, section 9 of the Florida Constitution by imposing a levy of one penny per pound on raw sugar. The full text of the petition reads as follows:
TITLE: FEE ON EVERGLADES SUGAR PRODUCTION
SUMMARY: Provides that the South Florida Water Management District shall levy an Everglades Sugar Fee of l<t per pound on raw sugar grown in the Everglades Agricultural Area to raise funds to be used, consistent with statutory law, for purposes of conservation and protection of natural resources and abatement of water pollution in the Everglades. The fee is imposed for twenty-five years.
FULL TEXT OF THE PROPOSED AMENDMENT:
(a) Article VII, Section 9 is amended by a new subsection (c) at the end thereof, to read:
(c) The South Florida Water Management District, or its successor agency, shall levy a fee, to be called the Everglades Sugar Fee, of one cent per pound of raw sugar, assessed against each first processor, from sugarcane grown in the Everglades Agricultural Area. The Everglades *1128 Sugar Fee is imposed to raise funds to be used, consistent with statutory law, for purposes of conservation and protection of natural resources and abatement of water pollution in the Everglades Protection Area and Everglades Agricultural Area, pursuant to the policy of the state in Article II, Section 7.
(2) The Everglades Sugar Fee shall expire twenty-five years from the effective date of this subsection.
(3) For purposes of this subsection, the terms “South Florida Water Management District,” “Everglades Agricultural Area,” and “Everglades Protection Area” shall have the meanings as defined in statutes in effect on January 1,1996.
(b) This subsection shall take effect on the day after approval by the electors. If any portion or application of this measure is held invalid for any reason, the remaining portion of application, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
The opponents of the proposal assert that the Fee initiative violates the single-subject rule by logrolling the goal of cleaning up the Everglades with the goal of making Florida’s sugar industry pay for it; by performing multiple functions of multiple branches of government;[2] and by affecting many sections of the Florida Constitution without identifying them.[3] We disagree and conclude that the Fee amendment complies with the single-subject rule. First, it proposes a clear, single question to the voters: Should the sugar industry pay a penny a pound towards Everglades restoration? The imposition of the fee and the designation of the revenue for Everglades restoration are two components directly connected to the fundamental policy of requiring first processors to contribute towards ongoing Everglades restoration efforts.
Second, the Fee amendment does not substantially affect or alter any government function, but is a levy by an existing agency. As this Court noted in Advisory Opinion to the Attorney General re Limited Casinos, 644 So.2d 71 (Fla.1994), it is “difficult to conceive of a constitutional amendment which would not affect other aspects of government to some extent.” Id. at 74. A proposal may affect multiple branches of government, as does the instant proposal, so long as it does not substantially alter or perform the functions of these branches. Save Our Everglades, 636 So.2d at 1340.
Third, the opponents misapply the single-subject test by characterizing the amendment as affecting multiple sections of the constitution. We have stated in previous opinions that “the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment.” Limited Casinos, 644 So.2d at 74. In the instant ease, there is no substantial impact on other sections of the Florida Constitution.
With regard to the ballot title and summary, the opponents assert that each is misleading because the “fee” is really a tax, and this Court has distinguished between fees and taxes on the grounds that taxes are used for “governmental operations,” whereas fees are used “to fund services received by the paying customers.” Advisory Opinion to the Attorney General re Tax Limitation, 644 So.2d 486, 491 (Fla.1994). Opponents argue that a fee involves a quid pro quo that is lacking in the proposed Fee amendment. We reject the opponents’ argument and reiterate our statement from Save Our Everglades, to wit, the initiative “imposes a levy— whether characterized as a fee or a tax — on *1129 raw sugar.” 636 So.2d at 1840. There is no confusion relative to who pays, how much they pay, how long they pay, to whom they pay, and the general purpose of the payment. We find that the ballot title and summary comply with section 101.161 by clearly and unambiguously informing the voter relative to the purpose and substance of the amendment. Accordingly, we conclude that the initiative entitled, “Fee on Everglades- Sugar Production” complies with the single-subject and ballot title and summary requirements and should retain its place on the ballot.
II. PROPOSED TRUST FUND AMENDMENT
Next, the Trust Fund proposal seeks to amend article X by adding section 17, thereby creating a trust fund to be used for Everglades restoration. The full text of the petition reads as follows:
TITLE: EVERGLADES TRUST FUND
SUMMARY: Establishes an Everglades Trust Fund to be administered by the South Florida Water Management District for purposes of conservation and protection of natural resources and abatement of. water pollution in the Everglades. The Everglades Trust Fund may be funded through any sources, including gifts and state or federal funds.
FULL TEXT OF PROPOSED AMENDMENT
(a)Article X is amended by adding a new section 17 at the end thereof, to read: SECTION 17, Everglades Trust Fund.
(a) There is hereby established the Everglades Trust Fund, which shall not be subject to termination pursuant to Article II, Section 19(f). The purpose of the Everglades Trust Fund is to make funds available to assist in conservation and protection of natural resources and abatement of water pollution in the Everglades Protection Area and the Everglades Agricultural Area. The trust fund shall be administered by the South Florida Water Management District, or its successor agency, consistent with statutory law.
(b) The Everglades Trust Fund may receive funds from any source, including gifts from individuals, corporations or other entities, funds from general revenue as determined by the Legislature; and any other funds so designated by the Legislature, by the United States Congress or by any other governmental entity.
(c) Funds deposited to the Everglades Trust Fund shall be expended for purposes of conservation and protection of natural resources and abatement of water pollution in the Everglades Protection Area and Everglades Agricultural Area.
(d) For purposes of this subsection, the terms “Everglades Protection Area”, [sic] “Everglades Agricultural Area” and “South Florida Water Management District” shall have the meanings as defined in statutes in effect on January 1, 1996.
(b) If any portion or application of this measure is held invalid for any reason, the remaining portion or application, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and effect.
Opponents of the Trust Fund argue that the initiative violates the single-subject rule by performing multiple government functions: the legislative functions of establishing a trust fund and selecting for perpetuity the January 1, 1996, borders of the Everglades Agricultural Area and Everglades Protection Area and the executive function of directing the purposes for which the trust funds must be expended. The opponents further claim that the Trust Fund proposal substantially affects other sections of the Florida Constitution without identifying them.[4] The opponents also contend that the ballot title and summary are misleading because voters necessarily would assume that *1130 proceeds resulting from the Fee and Responsibility initiatives must be deposited into the Trust Fund, yet neither the ballot title or summary specifies that monies from the Fee amendment must fund the Trust Fund.
We reject the opponents’ contentions that the Trust Fund initiative violates the single-subject requirement and conclude that it substantially alters only one section of the constitution. The amendment accomplishes a single, limited purpose: the creation of a trust to receive and disperse funds for Everglades conservation. It performs no other functions and has no substantial impact on other branches of state government or upon the Florida Constitution.
The title and summary promise only the establishment of a trust to receive and disperse monies. The voters reading the title and summary -will learn the chief purpose of the initiative and be able to make an informed decision about whether to approve or reject the amendment. Accordingly, we find that the initiative entitled “Everglades Trust Fund” complies with the single-subject and ballot title and summary requirements and should retain its place on the ballot.
III. PROPOSED RESPONSIBILITY AMENDMENT
Finally, the Responsibility proposal seeks to amend article II, section 7 by requiring polluters to pay for the abatement of their pollution. The full text of the petition reads as follows:
TITLE: RESPONSIBILITY FOR PAYING COSTS OF WATER POLLUTION ABATEMENT IN THE EVERGLADES
SUMMARY: The Constitution currently provides the authority for the abatement of water pollution. This proposal adds a provision to provide that those in the Everglades Agricultural Area who cause water pollution within the Everglades Protection Area or the Everglades Agricultural Area shall be primarily responsible for paying the costs of the abatement of that pollution.
FULL TEXT OF THE PROPOSED AMENDMENT
(a) The Constitution currently provides, in Article II, Section 7, the authority for the abatement of water pollution. It is the intent of this amendment that those who cause water pollution within the Everglades Agricultural Area or the Everglades Protection Area shall be primarily responsible for paying the costs of abatement of that pollution.
(b) Article II, Section 7 is amended by inserting (a) immediately before the current text, and adding a new subsection (b) at the end thereof, to read:
(b) Those in the Everglades Agricultural Area who cause water pollution within the Everglades Protection Area or the Everglades Agricultural Area shall be primarily responsible for paying the costs of the abatement of that pollution. For the purposes of this subsection, the terms “Everglades Protection Area” and “Everglades Agricultural Area” shall have the meanings as defined in statutes in effect on January 1,1996.
Opponents argue that the Responsibility initiative violates the single-subject rule by performing legislative, executive, and judicial functions,[5] and that the ballot title and summary are misleading. We disagree and find that the Responsibility initiative manifests “a logical and natural oneness of purpose” thereby complying with the single-subject requirement. Fine v. Firestone, 448 So.2d at 990. The initiative has a limited and focused objective: Those who cause water pollution within the Everglades Protection Area or the Everglades Agricultural Area shall be primarily responsible for paying the costs of the abatement of that pollution. We also conclude that the ballot title and summary are not misleading. The Responsibility initiative makes clear that those in the Ever *1131 glades Protection Area or the Everglades Agricultural Area who cause water pollution will pay for their pollution. Accordingly, we find that the initiative entitled “Responsibility for Paying Costs of Water Pollution Abatement in the Everglades” complies with the single-subject and ballot title and summary requirements and should retain its place on the ballot.
IV. COMPLAINT FOR DECLARATORY JUDGMENT
The plaintiffs argue that the signatures obtained on SOE’s single unified petition are invalid because the petition contains changes in wording and punctuation forbidden by the rules of the Division of Elections.[6] Although each of the separate petitions was approved, SOE consolidated the three petitions into a single form and circulated it without obtaining subsequent approval. The consolidated petition contained separate signature lines, ballot titles, summaries, and texts of the three initiatives. In bold type at the top of the form, the petition read: “THREE PETITIONS • READ EACH CAREFULLY • SIGN AND DATE ANY OR ALL”. The plaintiffs further assert that consolidating the three petitions violates the single-subject rule.
We first reject plaintiffs’ argument that the unified petition violates the single-subject rule and find that, as presented to signers of the unified petition, each proposal addresses a single subject, each is clearly freestanding, and signers could support or reject one or more of them. Second, we address the plaintiffs’ argument that the changed language is more than a technical defect, that it substantially alters the petitions. The following wording changes occur in the ballot summary of the Fee proposal and text of the Trust Fund proposal as printed on the single unified petition form:
Approved Summary of Fee Petition (emphasis added)
Summary: Provides that the South Florida Water Management District shall levy an Everglades Sugar Fee of l<t per pound on raw sugar grown in the Everglades Agricultural Area ...
Unified Petition (emphasis added)
Summary: Provides that the South Florida Water Management District shall levy an Everglades Sugar Fee of 1$ per pound on raw sugar as grown in the Everglades Agricultural Area ...
Approved Text of Trust Fund Petition (emphasis added)
(b) If any portion or application of this measure is held invalid for any reason, the remaining portion or application, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and effect.
Unified Petition (emphasis added)
(b) If any portion of application of this measure is held invalid for any reason, the remaining portion or application, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and effect.
We reject plaintiffs’ argument and conclude that the de minimis wording changes in these petitions do not significantly alter the meaning of the affected provisions. We hold that substantial compliance with Rule 1S-2.009(10) is sufficient, given that the underlying purpose of the rule is to have an approved petition presented to signers substantially unchanged.
By way of analogy, we agree with the logic of the Court of Appeals of Oregon in Barnes v. Paulus, 36 Or.App. 327, 588 P.2d 1120 (1978). In that case, the court upheld the validity of an initiative petition even though opponents contended that it did not comply with rules mandating that the text of a circulating initiative petition be printed exactly as it was submitted when the preliminary peti *1132 tion was filed. The Paulus court explained that “[t]he important thing is the extent to which the defect might influence the voters’ consideration of the merits” and that
[i]t is a matter of balancing the seriousness of the defect against the consequences of invalidation. Before the electorate will be disfranchised by anyone’s failure to comply with the statute, the failure must be one of considerable magnitude_ In determining the magnitude of the failure, we must consider the likelihood that the error misled the signers of the petition.
Id. 588 P.2d at 1124. In applying the analysis of Paulus to the instant case, we conclude it is unlikely that the noted wording changes in the instant petitions misled, deceived, or produced confusion in signers’ minds concerning the impact of the proposed amendments. The errors are without substance, there was no attempt to mislead, and the voters expressed their support for the petitions. On balance, the seriousness of the defects do not outweigh the consequences of invalidating the petitions. We nevertheless caution drafters to exercise care in the future because doubts regarding changes in meaning will work against proponents. Accordingly, we grant SOE’s motion to dismiss and deny Williams’ motion for summary judgment and hold that the signatures obtained on the unified single form petition are valid.
V. CONCLUSION
For the foregoing reasons, we hold that the titles, summaries, and texts of the proposed amendments meet the requirements of article XI, section 8 of the Florida Constitution and section 101.161, Florida Statutes, and each is approved for placement on the ballot. This opinion should not be construed as favoring or opposing the passage of the proposed amendments.
It is so ordered.
KOGAN, C.J., and OVERTON, HARDING, WELLS and ANSTEAD, JJ., concur.
GRIMES, J., recused.

. In Advisory Opinion to the Attorney General— Save Our Everglades, 636 So.2d 1336 (Fla.1994), we reviewed the current proposed amendments' predecessor and struck it from the ballot concluding that the title, summary, and text violated the single-subject rule and the ballot title and summary requirements. Id. at 1342. We note that the proponents of the initiatives have addressed each of the concerns we raised in reviewing the prior proposed amendment.

. Opponents contend that the Fee initiative performs the following functions of government: the judicial function of designating Florida’s sugar industry to be liable for pollution and determining the amount of damages it must pay; the legislative functions of imposing a tax, providing for the abatement of pollution, selecting the January 1, 1996, boundaries as the permanent boundaries without providing for subsequent statutory changes; and the executive function of determining the existence of remediable levels of pollution, thus replacing state agencies that otherwise exercise those powers.

. Opponents contend that the initiative fails to mention its amendment of article VII, section 9; article II, section 7; article VII, section 1(c); article III, section 19(a); article III, section 8(a); article IV, section 1(a); and article II, section 3.

. Opponents contend that the Trust Fund proposal substantially affects article III, section 19(f)(1), which forbids trust funds unless created by “a three-fifths vote of the membership of each house of the legislature in a separate bill for that purpose only;'' article VII, section 1(c) by withdrawing its appropriation power; and article II, section 7 by usurping the legislature's duties to provide for the abatement of water pollution.

. Opponents claim the Responsibility proposal performs the legislative function of "freezing” the boundaries within which the amendment would operate as of January 1, 1996; the executive functions of determining that remediable types and levels of pollution exist and will continue to exist in perpetuity, eliminating agency discretion to grant variances and other relief mechanisms, and designating abatement as the environmental goal; and the judicial function of selecting polluters as the parties liable for payment of abatement costs.

. The rules of the Division of Elections state in pertinent part:
Any change in a previously approved petition form, or additional types of petition forms to be circulated by a previously approved circulation, shall be submitted in accordance with the provisions of this rule. A change to a petition form or an additional type of petition form means a change in the wording of the text of the proposed amendment, the ballot title or ballot summary, including changes in punctuation.
Rule 1S-2.009(10), Fla. Admin. Code.