PER CURIAM.
The Attorney General has petitioned this Court for an advisory opinion as to the validity of a proposed citizen initiative amendment to the Florida Constitution, submitted by an organization called the Coalition to Reduce Class Size. We have jurisdiction. See art. IV, § 10; art V, § 3(b)(10), Fla. Const.
The proposed initiative petition amends article IX, section 1 of the Florida Constitution, which relates to public education. The ballot title of the proposed amendment is: “Florida’s Amendment to Reduce Class Size.” The summary for the proposed amendment provides:
Proposes an amendment to the State Constitution to require that the Legislature provide funding for sufficient classrooms so that there be a maximum number of students in public school classrooms for various grade levels; requires compliance by the beginning of 2010 school year; requires the Legislature, and not local school districts, to pay for the costs associated with reduced class size; prescribes a schedule for phased-in funding to achieve the required maximum class size.
The full text of the proposed amendment, as indicated in underlining, provides:
Article IX, Section 1, Florida Constitution, is amended to read:
Section 1. Public Education.—
The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing in its borders. Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other education programs that the needs of the people may require. To assure that children attending public schools obtain a high quality education, the legislature shall make adequate provision to ensure that, by the beginning of the 2010 school year, there are sufficient number of classrooms so that:

1. The maximum number of students who are assigned to each teacher who is teaching in public school classrooms for pre-kindergarten through grade 8 does not exceed 18 students;

2. The maximum number of students who are assigned to each teacher who is teaching in public school classrooms for grades 1 through 8 does not exceed 22 students;

8. The maximum number of students who are assigned to each teacher who is teaching in public school classrooms for grades 9 through 12 does not exceed 25 students.

The class size requirements of this subsection do not apply to extracurricular classes. Payment of the costs associated reducing class size to meet these requirements is the responsibility of the state and not of local school districts. Beginning with the 2008-2001- fiscal year, the legislature shall provide sufficient funds to reduce the average number of students in each classroom by at least two students per year until the 
*582
maximum number of students per classroom does not exceed the requirements of this subsection.

In determining the validity of initiative petitions, this Court is limited to a review of the following two legal issues: (1) whether the petition satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title and summary are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (2001). See Advisory Opinion to the Attorney Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 368 (Fla.2000). As we have previously stated, our “duty is to uphold the proposal unless it can be shown to be ‘clearly and conclusively defective.’” Advisory Opinion to the Attorney Gen. re Tax Limitation, 673 So.2d 864, 867 (Fla.1996) (quoting Floridians Against Casino Takeover v. Let’s Help Florida, 363 So.2d 337, 339 (Fla.1978)). In evaluating the propriety of the initiative petition, the Court does not review the merits of the proposed constitutional amendment, and does not decide whether the Legislature should more appropriately address the subject matter of the proposed amendment. See High Speed Monorail, 769 So.2d at 369. Moreover, other constitutional challenges are not justiciable in this type of proceeding. See Advisory Opinion to the Attorney Gen.—Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991).

Single Subject Requirement

Article XI, section 3 of the Florida Constitution provides in pertinent part that proposed amendments based on citizen initiative petitions “shall embrace but one subject and matter directly connected therewith.” Two reasons exist for the single-subject requirement. The primary reason for the single-subject requirement is to prevent what is known as “logrolling,” which is “a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.” High Speed Monorail, 769 So.2d at 369 (quoting Advisory Opinion to the Attorney General re Limited Casinos, 644 So.2d 71, 73 (Fla.1994)). To comply with this single-subject requirement, a proposed amendment must manifest a “logical and natural oneness of purpose.” See Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984).
The Citizens for Budget Fairness, a group who opposes this ballot initiative, contends that the amendment engages in blatant logrolling because it requires voters who may favor a reduction in class size in Florida to also vote for whatever unspecified and unlimited expenditure of State funds may be necessary to construct or purchase additional classrooms for public schools. We disagree.
In Advisory Opinion to the Attorney General—Save Our Everglades, 636 So.2d 1336, 1340 (Fla.1994), this Court struck down a ballot initiative seeking to “restore the Everglades” by compelling the sugar industry to fund the restoration. The Court explained that the initiative “embodies precisely the sort of logrolling that the single-subject rule was designed to foreclose,” because although a majority of voters may consider cleaning up the Everglades to be a laudatory goal, many may disagree with having the sugar industry fund such a cleanup. Id. at 1341. Therefore, because the ballot initiative would force voters to choose all or nothing, the Court held that the amendment violated the single-subject rule. See id.; see also Advisory Opinion to the Attorney Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565 (Fla.1998) *583 (holding that health care ballot amendment impermissibly combined two distinct subjects by banning limitations on health care provider choices imposed by law and by prohibiting private parties from entering into contracts that would limit health care provider choice, thereby providing voters with an “all or nothing” choice).
In contrast to Save Our Everglades and Health Care Providers, in Limited Casinos, 644 So.2d at 73, this Court rejected the argument that a ballot initiative that would amend the State constitution to authorize gambling casinos constituted impermissible logrolling. The Court held that the proposal did not combine subjects in such a manner as to force voters to accept one proposition they might not support in order to vote for one they favor. See id. We explained that “[ajlthough the petition contains details pertaining to the number, size, location, and type of facilities, we find that such details only serve to provide the scope and implementation of the initiative petitions.” Id.; see also Advisory Opinion to the Attorney General re Stop Early Release of Prisoners, 661 So.2d 1204, 1206 (Fla.1995) (holding that ballot initiative concerning the early release of prisoners that contained a provision pertaining to life sentences did not constitute logrolling, but merely provided “detail as to how the proposed amendment will be implemented in cases where life sentences are imposed”).
In this case, the ballot initiative deals with a single subject-the reduction of class size. The fact that the ballot initiative requires the Legislature to fund this reduction does not constitute the impermissible logrolling engaged in by the ballot initiatives in Save Our Everglades and Health Care Providers, but rather provides the details of how the ballot initiative will be implemented, as in Limited Casinos and Stop Early Release of Prisoners. Therefore, we conclude that the ballot initiative does not engage in logrolling.
A second reason for the single-subject requirement is to prevent a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government. See High Speed Monorail, 769 So.2d at 369. As we explained in High Speed Monorail:
Article XI, section 3 “protects against multiple ‘precipitous’ and ‘cataclysmic’ changes in the constitution by limiting to a single subject what may be included in one amendment proposal.” The single-subject requirement is a “rule of restraint” that was “placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure.”
Id. (citation omitted). However, this Court also has observed that it is “difficult to conceive of a constitutional amendment that would not affect other aspects of the government to some extent.” Id. (quoting Limited Casinos, 644 So.2d at 74).
We conclude that the proposed citizens’ initiative does not create such “precipitous” or “cataclysmic” changes in the functions of multiple branches of government as to render the initiative clearly and conclusively defective. In High Speed Monorail, 769 So.2d at 370, we rejected a single-subject challenge to a statewide high-speed monorail system, explaining that the amendment “may have broad ramifications for this State, but it only deals with one subject and it does not substantially alter or perform multiple functions of government.” In that case, we distinguished Advisory Opinion to the Attorney General re Requirement for Adequate Public Education Funding, 703 So.2d 446, 450 (Fla.1997), in which the Court struck down a proposed constitutional amendment requiring that forty percent of state appropria *584 tions, not including lottery proceeds or federal funds, be allocated to education. See High Speed Monorail, 769 So.2d at 370. The Court in High Speed Monorail explained:
Although the proposed amendment does not point to a specific tax or fee from which the revenues for the project would come, it also does not require the Legislature to spend a specific percentage of the budget or even a specific amount on the development of this system. Additionally, assuming the amendment would place some restrictions or limits on the veto power regarding the budget for money to build the high speed ground rail system, we do not find this to be the type of “precipitous” or “cataclysmic” change prohibited by the single subject restriction. Such a restriction, unlike the adequate public funding amendment, "would not in any event “substantially alter” the Governor’s powers or “perform multiple functions of government.” Indeed, it appears that the branches of government are left with wide discretion in determining the details of the project.
Id. at 370-71.
As in High Speed Monorail, the proposed amendment in this case does not specify a certain percentage of the budget or a specific amount to be spent on reducing class size. Therefore, we conclude that the proposed amendment does not substantially alter or perform multiple functions of State government.
Regarding the opponent’s argument that the proposed ballot initiative substantially alters the functions of the local school boards, article IX, section 4(b), of the Florida Constitution currently delineates the constitutional duties of school boards as follows:
The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein.
The proponent of the ballot initiative contends that the initiative will not substantially alter or perform the functions of the school board to “operate, control or supervise all free public schools within the school district.” The proponent maintains that the ballot initiative will not force the district school boards to construct new classrooms or schools in accordance with any particular model or educational theory. Rather, the proponent claims, the proposed ballot initiative simply furthers the already established legislative goal contained in section 236.687, Florida Statutes (2001), which provides:
It shall be the goal of the Legislature ... that each elementary school in the school district beginning with kindergarten through grade three class sizes not exceed 20 students, with a ratio of one full-time equivalent teacher per 20 students; except that only in the case of critically low-performing schools as identified by the Commissioner of Education, the goal in kindergarten through grade three shall be a ratio of one full-time equivalent teacher per 15 students.
Therefore, the proponent argues that only the Legislature, in the manner in which it provides funding for school classrooms, will be required to act as a result of this amendment.
We agree that the proposed amendment does not substantially alter or perform the functions of the. local school board. Although, as a result of the amendment, the Legislature may choose to fund the building of new schools to achieve the maximum classroom size set as a goal of the proposed amendment, this is not the only method of ensuring that the number of students meets the numbers set forth in the amendment. Rather than restricting the Legislature, the proposed amendment *585 gives the Legislature latitude in designing ways to reach the class size goal articulated in the ballot initiative, and places the obligation to ensure compliance on the Legislature, not the local school boards. Accordingly, for all these reasons we conclude that this proposed initiative does not violate the single subject limitation.

Section 101.161

We also conclude that the language of the title and ballot summary of the proposed constitutional amendment comports with section 101.161(1), Florida Statutes (2001). Section 101.161(1) provides, in pertinent part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot
.... [T]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
Section 101.161(1) requires that the ballot title and summary “state in clear and unambiguous language the initiative’s primary purpose.” Advisory Opinion to the Attorney Gen. re People’s Property Rights Amendments Providing Compensation for Restricting Real Property Use May Cover Multiple Subjects, 699 So.2d 1304, 1307 (Fla.1997). Furthermore, the ballot title and summary must be accurate and informative. See Advisory Opinion to the Attorney Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). The purpose of section 101.161 is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Id. Finally, the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters. See Tax Limitation, 673 So.2d at 868.
The title of this initiative is “Florida’s Amendment to Reduce Class Size.” The ballot summary makes clear that the Legislature is responsible for providing funding to reduce the number of students in public school classrooms in various grade levels. Thus, when read together, the ballot title and summary clearly inform voters of the amendment’s chief purpose, and provide an accurate description of the amendment. Moreover, the summary does not omit any material information and is not misleading.
Both the Attorney General and the Citizens for Budget Fairness contend that the ballot title and summary are defective because they fail to inform voters that an exception to the Legislature’s mandate to fund smaller classroom sizes exists for “extracurricular classes.” However, this Court has explained that “the title and summary need not explain every detail or ramification of the proposed amendment.” Advisory Opinion to the Attorney Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997). In other words, “the ballot summary is not required to include all possible effects ... nor ‘to explain in detail what the proponents hope to accomplish.’ ” Tax Limitation, 673 So.2d at 868. We conclude that the ballot title and summary are not defective despite the fact that the ballot summary does not inform voters of the exception for “extracurricular classes,” because the primary purpose of the amendment — the legislative funding of reduced classroom size — is adequately disclosed in the ballot title and summary. *586 Therefore, we conclude that the ballot initiative complies with section 101.161(1).
Accordingly, there is no bar to placing the proposed amendment on the ballot.
It is so ordered.
WELLS, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
HARDING, J., concurs with an opinion.