PER CURIAM.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution. We have jurisdiction. See art. IV, § 10; art V, § 3(b)(10), Fla. Const.
I. FACTS
Derail the Bullet Train (“DEBT”), a political committee registered pursuant to section 106.03, Florida Statutes (2003), has invoked article XI, section 3, Florida Constitution, to propose a constitutional amendment through the citizen initiative process. The amendment would repeal the “high speed ground transportation” provision in article X, section 19, Florida Constitution, which was adopted in the general election of 2000.[1]
The ballot title for the proposed amendment reads as follows: “Repeal of High Speed Rail Amendment.” The summary for the proposed amendment provides as follows:
This amendment repeals an amendment in the Florida Constitution that requires the Legislature, the Cabinet and the Governor to proceed with the development and operation of a high speed ground transportation system by the state and/or by a private entity.
The full text of the proposed amendment states as follows:
Article X, Section 19, Florida Constitution, is hereby repealed in its entirety.
Pursuant to section 15.21, Florida Statutes (2003), on June 2, 2004, the Florida Secretary of State submitted the present proposed amendment to the Florida Attorney General. The Attorney General has petitioned this Court for an advisory opin *625 ion as to whether the text of the proposed amendment complies with the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot title and summary comply with the requirements of section 101.161, Florida Statutes (2003). See Art. IV, § 10, Fla. Const.; § 16.061, Fla. Stat. (2003). DEBT has filed a brief in favor of the amendment. No party has filed a brief in opposition.
II. THIS COURT’S INQUIRY
When the Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, no lower court ruling exists for the Court to review. Therefore, no conventional standard of review applies. Instead, the Court limits its inquiry to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3, Floridá Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2003). See, e.g., Advisory Op. to Att’y Gen. re Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000). In addressing these two issues, our inquiry is governed by several general principles. First, we will not address the merits or wisdom of the proposed amendment. See, e.g., Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891. Second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, “the Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Op. to Att’y Gen. re Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Amendment to Bar Gov’t From Treating From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891 (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.”).
III. THE SINGLE-SUBJECT RULE
Article XI, section 3, Florida Constitution, sets forth the requirements for a proposed constitutional amendment arising via the citizen initiative process. This section contains the single-subject rule:
SECTION 3. Initiative. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const. (emphasis added). The single-subject requirement is a “rule of restraint” that was “placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure.” Advisory Op. to Att’y Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997) (quoting Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984)). Specifically, the single-subject rule prevents an amendment from engaging in either of two practices: (a) logrolling, or (b) substantially altering or performing the functions of multiple branches of state government.
A. Logrolling
The single-subject rule prevents logrolling, “a practice wherein several separate *626 issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.” See In re Advisory Op. to Att’y Gen.— Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994), see also Advisory Op. to Att’y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla.1994) (“A primary purpose for the single-subject restriction is to prevent ‘logrolling,’ a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.”); Fine, 448 So.2d at 993 (“The purpose of the single-subject requirement is to ... avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.”). In addressing this issue, the Court utilizes a “oneness of purpose” standard. See Fine, 448 So.2d at 990 (“[T]he one-subject limitation deal[s] with a logical and natural oneness of purpose .... ”). A proposed amendment meets this test when it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test....” Id. (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
In this case, DEBT contends that the proposed amendment does not engage in impei'missible logrolling. We agree. In fact, no party argues that the proposed amendment is deficient in this respect. The Court specifically addressed this issue in its opinion approving the original high-speed ground transportation amendment in 2000:
The only subject embraced in the proposed amendment is whether the people of this State want to include a provision in their Constitution mandating that the government build a high speed ground transportation system. Thus, there is no impermissible logrolling.
Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for High Speed Monorail, 769 So.2d 367, 369 (Fla.2000). Similarly, the only subject embraced in the present proposed amendment is the repeal of the provision mandating a high speed ground transportation system. The amendment thus “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme.” Fine, 448 So.2d at 990. The proposed amendment does not violate the single-subject rule in this respect.
B. Altering or Performing the Functions of Multiple Branches of Government
The single-subject rule also prevents “a single amendment from substantially altering or performing the functions of multiple branches of government and thereby causing multiple ‘precipitous’ and ‘cataclysmic’ changes in state government.” Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 495. We previously have held that while most amendments will “affect” multiple branches of government, this fact alone is insufficient to invalidate an amendment on single-subject grounds:
As the proponents of the amendment point out, the fact that an amendment affects multiple functions of government does not automatically invalidate a citizens’ initiative. As we explained in detail in [a prior case]:
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. However, this Court has held that a proposed amendment can meet *627 the single-subject requirement even though it affects multiple branches of government.
Advisory Op. to Att’y Gen. re Fla. Transp. Initiative, 769 So.2d 367, 369-70 (Fla.2000) (emphasis added) (quoting Advisory Op. to Atty. Gen. re. Limited Casinos, 644 So.2d at 74). Further, “the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment.” Limited Casinos, 644 So.2d at 74. The abiding test is as follows:
A proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.
Advisory Op. to Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353-54 (Fla.1998) (emphasis added).
DEBT contends that the proposed amendment does not substantially alter or perform the functions of multiple branches of government. We agree. Again, no party argues that the amendment is deficient in this respect. The Court addressed this issue in its opinion approving the original high speed ground transportation amendment:
Like the [proposed amendment in another case], this proposed amendment concerning a high-speed transportation system may have broad ramifications for this State, but it only deals with one subject and it does not substantially alter or perform multiple functions of government.
Fla. Transp. Initiative for High Speed Monorail, 769 So.2d at 370. Similarly, the proposed amendment may have broad ramifications for the State, but “it only deals with one subject and it does not substantially alter or perform multiple functions of government.” Accordingly, the present proposed amendment does not violate the single-subject rule in this respect.
IV. BALLOT TITLE AND SUMMARY
Section 101.161, Florida Statutes (2003), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2003). The basic purpose of this provision is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” See Advisory Op. to Att’y Gen. re Fee On Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla.1996).
The Court in Advisory Opinion to the Attorney General re Save Our Everglades, 636 So.2d 1336 (Fla.1994), explained further:
“[S]ection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure.” This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. However, “it is not necessary to explain every ramification of a proposed amendment, only the chief purpose.”
*628 Save Our Everglades, 636 So.2d at 1341 (quoting Askew v. Firestone, 421 So.2d 151, 154-55 (Fla.1982)), and Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986); see also Ltd. Casinos, 644 So.2d at 74. Specifically, in conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment.” Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 497. Second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
DEBT contends that the ballot title and summary for the proposed amendment meet the requirements of section 101.161(1), Florida Statutes (2003). We agree. No party argues that the present ballot title and summary are infirm. In fact, our review of the ballot title and summary shows that they meet the statutory word limit restrictions, they fairly inform the voter of the chief purpose of the amendment, and they do not mislead the public. Therefore, the ballot title and summary comply with section 101.161(1).
V. CONCLUSION
Based on the foregoing, we hold that the present initiative petition complies with the single-subject requirement of article XI, section 3, Florida Constitution, and that the ballot title and summary comply with the requirements of section 101.161(1), Florida Statutes (2003). Therefore, we approve the amendment for placement on the ballot. We caution, however, that our opinion today is limited to the above issues and must not be construed in any way as a ruling on the underlying merits or wisdom of the amendment.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. The “high speed ground transportation” provision in the Florida Constitution provides as follows:
SECTION 19. High speed ground transportation system. — To reduce traffic congestion and provide alternatives to the traveling public, it is hereby declared to be in the public interest that a high speed ground transportation system consisting of a monorail, fixed guideway or magnetic levitation system, capable of speeds in excess of 120 miles per hour, be developed and operated in the State of Florida to provide high speed ground transportation by innovative, efficient and effective technologies consisting of dedicated rails or guideways separated from motor vehicular traffic that will link the five largest urban areas of the State as determined by the Legislature and provide for access to existing air and ground transportation facilities and services. The Legislature, the Cabinet and the Governor are hereby directed to proceed with the development of such a system by the State and/or by a private entity pursuant to state approval and authorization, including the acquisition of right-of-way, the financing of design and construction of the system, and the operation of the system, as provided by specific appropriation and by law, with construction to begin on or before November 1, 2003.
Art. X, § 19, Fla. Const: