PER CURIAM.
In compliance with section 16.061, Florida Statutes (1991), the Attorney General has petitioned this Court for an advisory opinion on the validity of an initiative petition providing for a limit on the use of nets for catching saltwater finfish, shellfish, or other marine animals. We have jurisdiction pursuant to article IV, section 10 of the Florida Constitution. In response, we issued an order permitting interested parties to file briefs.[1]
The initiative petition, which would add section 16 to article X of the Florida Constitution, provides as follows:
Section. 16. Limiting Marine Net Fishing
(a) The marine resources of the State of Florida belong to all of the people of the state and should be conserved and managed for the benefit of the state, its people, and future generations. To this end the people hereby enact limitations on marine net fishing in Florida waters to protect saltwater finfish, shellfish, and *998 other marine animals from unnecessary killing, overfishing, and waste.
(b) For purposes of catching or taking any saltwater finfish, shellfish or other marine animals in Florida waters:
(1) No gill nets or other entangling nets shall be used in Florida waters; and
(2) In addition to the prohibition set forth in (1), no other type of net containing more than 500 square feet of mesh area shall be used in nearshore and inshore Florida waters. Additionally, no more than two such nets, which shall not be connected, shall be used from any vessel, and no person not on a vessel shall use more than one such net in nearshore and inshore Florida waters.
(c) For purposes of this section:
(1) “gill net” means one or more walls of netting which captures saltwater finfish by ensnaring or entangling them in the meshes of the net by the gills, and “entangling net” means a drift net, trammell net, stab net, or any other net which captures saltwater finfish, shellfish, or other marine animals by causing all or part of heads, fins, legs, or other body parts to become entangled or ensnared in the meshes of the net, but a hand thrown cast net is not a gill or an entangling net;
(2) “mesh area” of a net means the total area of netting with the meshes open to comprise the maximum square footage. The square footage shall be calculated using standard mathematical formulas for geometric shapes. Seines and other rectangular nets shall be calculated using the maximum length and maximum width of netting. Trawls and other bag type nets shall be calculated as a cone using the maximum circumference of the net mouth to derive the radius, and the maximum length from the net mouth to the tail end of the net to derive the slant height. Calculations for any other nets of combination type nets shall be based on the shape of the individual components;
(3) “coastline” means the territorial sea base line for the State of Florida established pursuant to the laws of the United States of America;
(4) “Florida waters” means the waters of the Atlantic Ocean, the Gulf of Mexico, the Straits of Florida, and any other bodies of water under the jurisdiction of the State of Florida, whether coastal, intra-coastal or inland, and any part thereof; and
(5) “nearshore and inshore Florida waters” means all Florida waters inside a line three miles seaward of the coastline along the Gulf of Mexico and inside a line one mile seaward of the coastline along the Atlantic Ocean.
(d) This section shall not apply to the use of nets for scientific research or governmental purposes.
(e) Persons violating this section shall be prosecuted and punished pursuant to the penalties in s. 370.021(2)(a), (b), (c)6. and 7., and (e), Florida Statutes (1991), unless and until the legislature enacts more stringent penalties for violations thereof. On and after the effective date of this section, law enforcement officers in the state are authorized to enforce the provisions of this section in the same manner and authority as if a violation of this section constituted a violation of Chapter 370, Florida Statutes (1991).
(f) It is the intent of this section that implementing legislation is not required for enforcing any violations hereof, but nothing in this section prohibits the establishment by law or pursuant to law of more restrictions on the use of nets for the purpose of catching or taking any saltwater finfish, shellfish, or other marine animals.
(g) If any portion of this section is held invalid for any reason, the remaining portion of this section, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
(h) This section shall take effect on the July 1 next occurring after approval hereof by vote of the electors.
The first issue we address is whether the proposed amendment meets the single-subject requirement. Article XI, section 3, Florida Constitution, provides that a proposed amendment “shall embrace but *999 one subject and matter directly connected therewith.” To satisfy the single-subject test, the proposed amendment must have a “natural relation and connection as component parts or aspects of a single dominant plan or scheme.” Advisory Opinion to the Attorney General-Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991) (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)). The purpose of the single-subject restriction is to prevent the proposal of an amendment which contains two unrelated provisions, one which electors might wish to support and one which they might disfavor. Advisory Opinion to the Attorney General-Limited Political Terms in Certain Elective Offices, 592 So.2d 225.
We find that the proposed amendment is functionally and facially unified and therefore complies with the single-subject requirement. As stated in paragraph (a) of the proposed amendment, the sole purpose of the amendment is to protect certain types of marine life from unnecessary killing, overfishing and waste. The remaining provisions, which provide definitions, exemptions, penalties, a severability clause, and an effective date, are logically related to the subject of the amendment.
The proposed amendment must also satisfy the ballot title and summary requirements of section 101.161(1), Florida Statutes (1991). The proposed ballot summary provides as follows:
LIMITING MARINE NET FISHING
Limits the use of nets for catching saltwater finfish, shellfish, or other marine animals by prohibiting the use of gill and other entangling nets in all Florida waters, and prohibiting the use of other nets larger than 500 square feet in mesh area in nearshore and inshore Florida waters. Provides definitions, administrative and criminal penalties, and exceptions for scientific and governmental purposes.
According to section 101.161(1), the substance of the amendment “shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.” Because the ballot summary and title do not exceed the permissible number of words, the only issue to be addressed is whether the substance of the améndment adheres to the standards we have previously set forth. The ballot summary and title requirements were designed to assure that the elector had fair notice of the proposed amendment’s chief purpose. In re Advisory Opinion to the Attorney General English-The Official Language of Florida, 520 So.2d 11 (Fla.1988); Askew v. Firestone, 421 So.2d 151 (Fla.1982). We find that the ballot title and summary on the limited marine net fishing amendment provide electors with sufficient information to make an informed decision on how to cast their ballots.
We hold that the initiative petition and proposed ballot summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (1991). No other issue is encompassed in this opinion and it should not be construed as favoring or opposing the passage of the proposed amendment.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., concurs with an opinion, in which BARKETT, C.J., and OVERTON and KOGAN, JJ., concur.

. No briefs were filed in opposition to the petition.