PER CURIAM.
Pursuant to section 15.21, Florida Statutes (2001), the Secretary of State submitted to the Attorney General an initiative petition which sought to amend the Florida Constitution to limit the cruel and'inhumane confinement of pigs during pregnancy. In turn, the Attorney General petitioned this Court for an advisory opinion relative to the validity of this initiative petition (hereinafter “proposed amendment”) according to article IV, section 10 of the Florida Constitution, and section 16.061, Florida Statutes (2001). We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. In response, this Court issued an order permitting interested parties to file briefs on the proposed amendment.[1]
The following are the ballot title and summary of the proposed amendment:
Ballot title: Animal Cruelty Amendment: Limiting Cruel and Inhumane Confinement of Pigs During Pregnancy.
Ballot summary: Inhumane treatment of animals is a concern of Florida citizens; to prevent cruelty to animals and as recommended by The Humane Society of the United States, no person shall confine a pig during pregnancy in a cage, crate or other enclosure, or tether a pregnant pig, on a farm so that the pig is prevented from turning around freely, except for veterinary purposes and during the pre-birthing period; provides definitions, penalties, and an effective date.
The text of the proposed amendment, which would add section 20 to article X of the Florida Constitution, provided as follows:
Section 20. Limiting Cruel and Inhumane Confinement of Pigs During Pregnancy.
Inhumane treatment of animals is a concern of Florida citizens. To prevent cruelty to certain animals and as recommended by The Humane Society of the United States, the people of the State of Florida hereby limit the cruel and inhumane confinement of pigs during pregnancy as provided herein.
(a) It shall be unlawful for any person to confine a pig during pregnancy in an enclosure, or to tether a pig during pregnancy, on a farm in such a way that she is prevented from turning around freely.
(b) This section shall not apply:
(1) when a pig is undergoing an examination, test, treatment or operation carried out for veterinary purposes, provided that the period during which the animal is confined or tethered is not longer than reasonably necessary.
(2) during the prebirthing period.
(e) For purposes of this section:
*598 (1) “enclosure” means any cage, crate or other enclosure in which a pig is kept for all or the majority of any day, including what is commonly described as the “gestation crate.”
(2) “farm” means the land, buildings, support facilities, and other appurtenances used in the production of animals for food or fiber.
(3) “person” means any natural person, corporation and/or business entity-
(4) “pig” means any animal of the porcine species.
(5) “turning around freely” means turning around without having to touch any side of the pig’s enclosure.
(6) “prebirthing period” means the seven-day period prior to a pig’s expected date of giving birth.
(d) A person who violates this section shall be guilty of a. misdemeanor of the first degree, punishable as provided in s. 775.082(4)(a), Florida Statutes (1999), as amended, or by a fine of not more than $5000, or by both imprisonment and a fine, unless and until the legislature enacts more stringent penalties for violations hereof. On and after the effective date of this section, law enforcement officers in the state are authorized to enforce the provisions of this section in the same manner and authority as if a violation of this section constituted a violation of Section 828.13, Florida Statutes (1999). The confinement or tethering of each pig shall constitute a separate offense. The knowledge or acts of agents and employees of a person in regard to a pig owned, farmed, or in the custody of a person, shall be held to be the knowledge or act of such person.
(e) It is the intent of this section that implementing legislation is not required for enforcing any violations hereof.
(f) If any portion of this section is held invalid for any reason, the remaining portion of this section, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
(g) The section shall take effect six years after approval by the electors.
The first issue we address is whether the proposed amendment meets the single-subject requirement. Article XI, section 3 of the Florida Constitution provides in pertinent part that proposed amendments based on citizen initiative petitions “shall embrace but one subject and matter directly connected therewith.” The single-subject requirement applies to the citizen initiative method of amending the constitution because
section 3 [citizen initiative] does not afford the same opportunity for public hearing and debate that accompanies the proposal and drafting processes of sections 1, 2, and 4. Accordingly, section 3 protects against multiple “precipitous” and “cataclysmic” changes in the constitution by limiting to a single subject what may be included in any one amendment proposal.
Advisory Opinion to the Atty. Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353 (Fla.1998).
A proposed amendment must manifest a “logical and natural oneness of purpose” in order to satisfy the single-subject requirement. Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). This determination requires this Court to consider whether the proposed amendment affects separate functions of government, as well as how it affects other provisions of the constitution. See In re Advisory Opinion to the Atty. Gen.—Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994). However, “the possibility that an amendment might interact with other parts of *599 the Florida Constitution is not sufficient reason to invalidate the proposed amendment.” Advisory Opinion to the Atty. Gen. — Fee on the Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla.1996) (quoting Advisory Opinion to the Atty. Gen. re Limited Casinos, 644 So.2d 71, 74 (Fla.1994)). Likewise, “[a] proposal that affects several branches of government will not automatically fail.” Fish & Wildlife Conservation Comm’n, 705 So.2d at 1353— 54. Rather, “it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Id. at 1354.
The only subject embraced in the proposed amendment is a prohibition against the inhumane confinement of pregnant pigs. Its provisions, which indicate the definitions, exemptions, penalties, and an effective date, are logically related to the subject of the proposed amendment. See Advisory Opinion to the Atty. Gen.—Limited Marine Net Fishing, 620 So.2d 997 (Fla.1993). Thus, we find that the proposed amendment is functionally and facially unified and therefore complies with the single-subject requirement.
Section 101.16(1), Florida Statutes (2001), governs the requirements for ballot titles and summaries and provides, in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.... [T]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2001). Thus, the statute requires that the ballot title and summary “state in ‘clear and unambiguous language the chief purpose of the measure.’ ” Advisory Opinion to the Atty. Gen. — Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla.1991) (quoting Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982)); accord Advisory Opinion to the Atty. Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998). The title and summary must also be accurate and informative. See Advisory Opinion to the Atty. Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). These requirements make certain that the “electorate is advised of the true meaning, and ramifications, of an amendment.” Advisory Opinion to the Atty. Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994) (quoting Askew, 421 So.2d at 156). This Court concluded that the purpose of the statute was “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Term Limits Pledge, 718 So.2d at 803. Nevertheless, “the title and summary need not explain every detail or ramification of the proposed amendment.” Advisory Opinion to the Atty. Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997).
In this proposed amendment, the ballot title does not exceed fifteen words and the ballot summary does not exceed seventy-five words in length in accordance with section 101.161(1), Florida Statutes (2001). Because the substance of the proposed amendment complies with the abovemen-tioned standards, we find that the ballot title and summary provide the citizens of Florida with sufficient information to make an informed decision at the ballot box.
*600 Accordingly, we hold that the initiative petition and proposed ballot title and summary meet the legal requirements of article XI, section 8 of the Florida Constitution, and section 101.161(1), Florida Statutes (2001). No other issue is encompassed in this opinion, and it should not be construed as favoring or opposing the passage of the proposed amendment.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which ANSTEAD and LEWIS, JJ., concur.

. No briefs were filed in opposition to the proposed amendment.