PER CURIAM.
The Attorney General petitions this Court for an advisory opinion regarding the validity of a proposed amendment to the Florida Constitution submitted by Florida Hometown Democracy, Inc., and the accompanying Financial Impact Statement' submitted by the Financial Impact Estimating Conference. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const.
For the reasons explained below, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, but that the ballot summary fails to comply with section 101.161(1), Florida Statutes (2004). Accordingly, the proposed amendment should not be placed on the ballot.
FACTS
A political action. committee, Florida Hometown Democracy, Inc., has invoked the petition process of article XI, section 3 of the Florida Constitution to propose a *764 constitutional amendment through citizen initiative. The amendment would require local governments to put a new comprehensive land-use plan or an amendment to an existing comprehensive land-use plan to a vote by referendum prior to adoption.
The ballot title for the proposed amendment is “Referenda Required for Adoption and Amendment of Local Government Comprehensive Land Use Plans.” The summary for the proposed amendment states:
Public participation in local government comprehensive land use planning benefits Florida’s natural resources, scenic beauty and citizens. Establishes that before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, the proposed plan or amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body and notice. Provides definitions.
The full text of the proposed amendment states:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article II, Section 7. Natural resources and scenic beauty of the Florida Constitution is amended to add the following subsection:
Public participation in local government comprehensive land use planning benefits the conservation and protection of Florida’s natural resources and scenic beauty, and the long-term quality of life of Floridians. Therefore, before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, such proposed plan or plan amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body as provided by general law, and notice thereof in a local newspaper of general circulation. Notice and referendum will be as provided by general law. This amendment shall become effective immediately upon approval by the electors of Florida.
For purposes of this subsection:
1. “Local government” means a county or municipality.
2. “Local government comprehensive land use plan” means a plan to guide and control future land development in an area under the jurisdiction of a local government.
3. “Local planning agency” means the agency of a local government that is responsible for the preparation of a comprehensive land use plan and plan amendments after public notice and hearings and for making recommendations to the governing body of the local government regarding the adoption or amendment of a comprehensive land use plan.
4. “Governing body” means the board of county commissioners of a county, the commission or council of a municipality, or the chief elected governing body of a county or municipality, however designated.
Pursuant to section 15.21, Florida Statutes (2004), the Florida Secretary of State submitted the amendment to the Florida Attorney General. In accordance with the provisions of article IV, section 10 of the Florida Constitution, and section 16.061, Florida Statutes (2004), the Attorney General petitioned this Court for an advisory opinion as to whether the text of the proposed amendment complies with article XI, section 3, and whether the proposed ballot title and summary comply with section *765 101.161C1).[1] The Attorney General also petitioned this Court for an advisory opinion as to whether the Financial Impact Statement complies with section 100.371(6), Florida Statutes (2004).
The sponsor of the proposed amendment, Florida Hometown Democracy, filed a brief in favor of the proposed amendment. The Florida League of Cities, the Florida Association of Counties, Inc., and the Foundation for Preserving Florida’s Future, Inc., filed briefs opposing the amendment.
REVIEW OF PROPOSED AMENDMENT
We recently summarized our standard and scope of review of proposed constitutional amendments as follows:
When the Court renders an advisory opinion concerning a' proposed constitutional amendment arising through the citizen initiative process, no lower court ruling exists for the Court to review. Therefore, no conventional standard of review applies. Instead, the Court limits its inquiry to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3, Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2003). See, e.g., Advisory Op. to Att’y Gen. re Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000). In addressing these two issues, our inquiry is governed by several general principles. First,, we will not address the merits or wisdom of the proposed . amendment. See, e.g., Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891. Second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, “the Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Op. to Att’y Gen. re Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891 (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.”).
Advisory Op. to Att’y Gen. re Repeal of High Speed Rail Amendment, 880 So.2d 624, 625 (Fla.2004) (alteration in original). We address the single-subject requirement and the ballot title and summary requirements separately below.
A. SINGLE-SUBJECT REQUIREMENT
Article XI, section 3 of the Florida Constitution, sets forth the single-subject requirement for. a proposed constitutional amendment arising via the citizen initiative process and provides in full:
*766 SECTION 3. Initiative. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
(Emphasis supplied.) The single-subject requirement serves two purposes. It prevents an amendment from (1) engaging in logrolling or (2) substantially altering or performing the functions of multiple branches of government.
1. Logrolling
Logrolling is “a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.” Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000) (quoting Advisory Op. to Att’y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla. 1994)). In addressing this issue the Court determines whether the amendment manifests a “logical and natural oneness of purpose.” Advisory Op. to Att’y Gen. re Fla.’s Amendment to Reduce Class Size, 816 So.2d 580, 582 (Fla.2002) (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla. 1984)). A proposed amendment meets this test when it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.” Fine, 448 So.2d at 990 (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
In this case, the sponsor asserts that the proposed amendment does not constitute logrolling because it can be logically viewed as a single dominant plan to enhance Florida’s environmental policy by increasing public participation in local government comprehensive land-use planning. The opponents, on the other hand, contend that the proposed amendment engages in logrolling because it (1) invites citizens to have the last word on natural resources and scenic beauty in order to get their ballot approval, but then requires that they vote on a multitude of other subjects that comprehensive plans encompass; and (2) incorporates a restriction upon the discretion of government agencies at both the state and local level, requiring voters to choose both even if they only want to approve one. We conclude that the proposed amendment does not constitute logrolling because it does not “combine subjects in such a manner as to force voters to accept one proposition they might not support in order to vote for one they favor.” Class Size, 816 So.2d at 583.
The proposed amendment deals only with local comprehensive land-use plan adoption and amendment and makes one change to the procedure by which these plans are adopted and amended — requiring referenda. That the plans themselves include more than one subject does not support the conclusion that the initiative has combined “unrelated provisions,” some of which are popular and others that may be disfavored. On the contrary, this initiative does not suffer the same defect as other proposed amendments that this Court has invalidated for logrolling.
For example, in In re Advisory Opinion to the Attorney General—Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994), the Court concluded that an initiative that created a trust to be funded by the sugar industry to restore the Everglades constituted logrolling because it contained two objectives: (1) to restore the Everglades, *767 which was “politically fashionable”; and (2) to compel the sugar industry to fund the restoration, which was “more problematic.” The Court explained that “[m]any voters sympathetic to restoring the Everglades might be antithetical to forcing the sugar industry to pay for the cleanup by itself, and yet those voters would be compelled to choose all or nothing.” Id. Similarly,, the Court concluded that the ballot initiative at issue in Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563 (Fla. 1998), constituted logrolling because it
eombine[d] two distinct subjects by banning limitations on health care provider choices imposed by law and by prohibiting private parties from entering into contracts that would limit health care provider choice. The amendment forces the voter who may favor or oppose one aspect of the ballot initiative to vote on the health care provider issue in an “all or nothing” manner.
Id. at 566.
Although the local comprehensive land-use plan initiative would require referenda on both plan adoption and plan amendments, these have “a natural relation and connection as component parts.” Fine, 448 So.2d at 990 (quoting Gray, 19 So.2d at 320). Accordingly, the proposed amendment does not engage in impermissible logrolling.
2. Altering or Performing the Functions of Multiple Branches of Government
The second purpose of the single-subject requirement is to prevent “a single amendment from substantially altering or performing the functions of multiple branches of government and thereby causing multiple ‘precipitous’ and ‘cataclysmic’ changes in state government.” Advisory Op. to the Att’y Gen. re Right to Treatment & Rehabilitation for Nonr-Violent Drug Offenses, 818 So.2d 491, 495 (Fla.2002). The fact that a single amendment may “affect” multiple areas of government is insufficient to invalidate an amendment on single-subject grounds. Limited Casinos, 644 So.2d at 74. Further, “the possibility that, an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment.” Id. “[Rjather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Advisory Op. to the Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1354 (Fla.1998).
The opponents first argue that the proposed amendment alters or performs the functions of multiple branches of government because it affects the “same swath” of executive, legislative, and local government land-use responsibilities that were the basis for the Court’s invalidation of one of the proposed amendments at issue in Advisory Opinion to the Attorney General re People’s Property Rights Amendments, 699 So.2d 1304 (Fla.1997). The opponents also assert that the proposed amendment will have the same impact as the amendment rejected by this Court in Save Our Everglades and is similar to another initiative rejected by the- Court in People’s Property Rights. We conclude that the initiatives at issue in People’s Property Rights and Save Our Everglades are distinguishable from the local government comprehensive land-use plan amendment at issue in this case.
One of the proposed amendments that the Court reviewed in People’s Property Rights “would require full compensation to be paid to the property owner when the government restricts use of private real property causing a loss in the fair market value.” 699 So.2d at 1306. The Court ruled that the proposed amendment violat *768 ed the single-subject requirement because it would have had a “substantial impact ... on both the legislative and executive branches of government,” and a “distinct and substantial effect on more than one level of government.” Id. at 1308. The Court explained:
The issue of property rights clearly affects the powers of the legislature. The legislative branch is empowered to enact legislation which establishes standards and criteria for regulating the use of land. Additionally, the legislature is required by article II, section 7 of the Florida Constitution to regulate the use of land to protect Florida’s natural resources and scenic beauty.
However, the subject of land use also substantially affects the executive branch of government. The executive branch is charged with the responsibility of carrying out the various functions of government which in multiple ways impact the use of real property in Florida. Restriction of use of real property inherently affects multiple functions of the executive branch in executing its responsibility. These functions include zoning, fire-protection regulations, storm-water drainage, garbage removal, clean-air requirements, and numerous others. This initiative affects not just legislative appropriations and statutory enactments but executive enforcement and decision-making. ... In addition, we find that this initiative would have a distinct and substantial effect on more than one level of government. The state, special districts, and local governments have various legislative, executive, and quasi-judicial functions which are applicable to land use including comprehensive planning, zoning, and controlling storm-water drainage and flood waters. Therefore, we hold that the proposed initiative is constitutionally deficient because it violates the single-subject requirement.
Id. (emphasis supplied) (citation omitted).
Unlike the proposed amendment in People’s Property Rights, which applied broadly to any type of land use and thus involved multiple levels and branches of government, the proposed amendment in this 'case calls for only one discrete change in the established scheme of comprehensive land-use plans — the local government legislative process of enactment and amendment. Cf. Coastal Dev. of N. Fla., Inc. v. City of Jacksonville Beach, 788 So.2d 204, 208-09 (Fla.2001) (recognizing prior decision holding that adoption of, and amendments to, local comprehensive plans are legislative acts and holding that small-scale development amendments to local comprehensive plans are also legislative acts). Thus, the proposed amendment would not substantially alter the executive enforcement of established plans or the multiple levels of government involved in either the approval of plans and plan amendments or the implementation of established plans.
We further conclude that the proposed amendment would not have a substantial effect on multiple branches of government similar to that of another initiative rejected by this Court in People’s Property Rights. That proposed amendment would have required voter approval of new state, local, or other taxes. This Court concluded that the proposed amendment violated the single-subject requirement in part because it would have impacted several levels and branches of government “through its substantial impact on article IX, Florida Constitution,” which requires adequate provision for free public schools. People’s Property Rights, 699 So.2d at 1310. In reaching this conclusion, the Court focused on the fact that under the funding formulas established by the Legislature, the mil *769 lage rate for each school district is dependent, in part, on a statewide evaluation. See id. Thus, a referendum for an increase in the millage rate in a certain district “would have an impact beyond the immediate school district to the entire state. A negative vote in a local referendum could scuttle the state plan and would result in a constitutional impasse because of conflicting constitutional requirements.” Id. at 1310-11.
Unlike the tax approval initiative discussed above, the proposed amendment in this case alters only the process for local adoption of or amendment to local comprehensive land-use plans. Therefore, a negative vote on a proposed plan or amendment would not have a statewide impact similar to the effect on the state school system that referenda on new taxes would have had.
The opponents also contend that the proposed amendment creates a “virtual fourth branch of government”—the citizenry. The opponents rely on Save our Everglades to support their position. The proposed amendment the Court reviewed in Save Our Everglades sought to amend the constitution “by creating a trust to restore the Everglades funded by a fee on raw sugar.” 636 So.2d at 1337. The Court held that the proposed amendment performed the functions of multiple branches of government by: (1) establishing a trust to restore the Everglades as well as imposing a levy (legislative functions); (2) giving the trustees broad authority to administer the trust, acquire lands with trust funds, and adopt rules (executive functions); and (3) finding that the sugar industry polluted the Everglades and imposing a flat fee on that industry to cover the clean-up costs (judicial functions). Id. at 1340. The Court explained that “[vjiewed in its entirety, the initiative creates a virtual fourth branch of government with authority to exercise the powers of the other-three on the subject of remedying Everglades pollution.” Id.
In contrast to Save our Everglades, the proposed amendment at issue in this case alters only one step in an already established process. It does not give the public the power to establish policy, collect funds, administer those funds, or adjudicate liability. In fact, the statutory scheme already in place allows local governments to utilize a referendum process in regard to a plan amendment if the amendment affects more than five parcels of land. : See § 163.3167(12), Fla. Stat. (2004) (“An initiative or referendum process in regard to any development order or in regard to any local comprehensive plan amendment' or map amendment that affects five or fewer parcels of land is prohibited.”). Thus, this initiative would mandate a process already approved by the Legislature in certain instances. Although the initiative would override section 163.3167(12) with respect to plan amendments that affect five or fewer parcels, the nullification of an existing statutory provision does not in and of itself establish a single-subject violation. See, e.g., Advisory Opinion to the Attorney General re Public Protection From Repeated Medical Malpractice, 880 So.2d 667, 670 (Fla:2004)' (recognizing that although the initiative would supersede a statutory provision, revoke the discretion of the Board of Medicine, and limit the Legislature’s power to enact any other law in conflict with the proposed amendment, these effects were not “sufficiently substantial to constitute the type of multiple precipitous and cataclysmic changes that the single-subject requirement is designed to prevent”) (internal quotation marks and footnote omitted).
In sum, we conclude that the proposed amendment neither constitutes logrolling nor substantially alters or performs the *770 functions of multiple branches of government. Accordingly, the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution.
B. BALLOT TITLE AND SUMMARY
Section 101.161, Florida Statutes (2004), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2004). This provision
requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure. This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. However, it is not necessary to explain every ramification of a proposed amendment, only the chief purpose.
Save Our Everglades, 636 So.2d at 1341 (citations, quotation marks, and alteration omitted).
Section 101.161(1) is a codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution. See Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982).[2] With regard to citizen initiatives, we recently explained that the
constitutional amendment process relies on an accurate, objective ballot summary for its legitimacy. Voters ... never see the actual text of the proposed amendment. They vote based only on the ballot title and the summary. Therefore, an accurate, objective, and neutral summary of the proposed amendment is the sine qua non of the citizen-driven process of amending our constitution.
Advisory Op to the Att’y Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 653-54 (Fla.2004) (citation omitted).
Our scrutiny of the validity of a proposed amendment under section 101.161(1) involves two questions. First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment.” Right to Treatment & Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 497. Second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Health Care Providers, 705 So.2d at 566.
As a preliminary matter, neither of the opponents presents any argument specifically directed towards the ballot title: “Referenda Required for Adoption and Amendment of Local Government Comprehensive Land Use Plans.” We conclude that the ballot title, which is less than fifteen words, fairly informs the voter of the chief purpose of the amendment and is not misleading.
The ballot summary of the proposed amendment provides:
*771 Public participation in local government comprehensive land use planning benefits Florida’s natural resources, scenic beauty and citizens. Establishes that before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, the proposed plan or amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body and notice. Provides definitions.
The opponents take issue with the first sentence of the summary. They contend that in stating that “public participation” in local government comprehensive land-use planning benefits Florida’s “natural resources” and “scenic beauty,” the first sentence contains impermissible emotional rhetoric that misstates the substance of the amendment because comprehensive land-use plans involve more than environmental and aesthetic components. We agree that the first sentence of the summary is fatally flawed.
In Advisory Opinion to the Attorney General re Additional Homestead Tax Exemption, 880 So.2d 646 (Fla.2004), we reiterated that the “ballot summary should tell the voter the legal effect of the amendment, and no more.” Id. at 653 (quoting Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984)). Here, the first sentence is more akin to an improper “editorial comment,” Evans, 457 So.2d at 1355, than an “accurate and informative” synopsis of the amendment. Advisory Opinion to the Attorney General re Tax Limitation, 644 So.2d 486, 490 (Fla.1994). In fact, the first sentence of the summary does nothing to explain the chief purpose of the proposed amendment, which is to require referenda on all local government comprehensive land-use plan adoptions or amendments.
The .sponsor argues that the chief purpose of the proposed amendment is to benefit Florida’s scenic beauty and natural resources. Although this may be the sponsors reason for promoting the amendment, the chief purpose of the amendment itself is to require referenda before there can be any changes to or adoptions of comprehensive land-use plans. In this respect, the first sentence of the comprehensive land-use plan ballot summary is distinguishable from the ballot summaries cited by Justices Lewis and Quince and approved by this Court in Advisory Opinion to the Attorney General re Limiting Cruel & Inhumane Confinement of Pigs During Pregnancy, 815 So.2d 597 (Fla. 2002), and Advisory Opinion to the Attorney General re Protect People from the Health Hazards of Second-Hand Smoke, 814 So.2d 415 (Fla.2002). The amendment in Confinement of Pigs During Pregnancy, which had a ballot summary that provided that “[i]nhumane treatment of animals is a concern of Florida citizens,” 815 So.2d at 597, dealt directly with the treatment of animals. Similarly, the amendment in Second-Hand Smoke, which had a ballot summary that provided that “[t]ó protect people from the hazards of second-hand tobacco smoke, this amendment prohibits tobacco smoking in enclosed indoor workplaces,” 814 So.2d at 416, dealt directly with limiting exposure to second-hand- smoke: Addressing the inhumane treatment of animals and the hazards of second-hand smoke were not only the sponsors’ reasons for advancing these amendments but were also the chief purposes of the amendments themselves.
Both Justice Lewis and Justice Quince also cite to Advisory Opinion to Attorney General — Limited Marine Net Fishing, 620 So.2d 997 (Fla.1993), in which the Court approved an initiative that contained a policy statement similar to the first sentence of the comprehensive land-use plan *772 ballot summary. Limited Marine 'Net Fishing differs from this case in that the public policy statement appeared only in the initiative, not in the ballot summary.
The first sentence of the ballot summary in this case is misleading also because it focuses the voter on “scenic beauty” and “natural resources,” while local comprehensive plans include multiple components, many of which do not involve strictly environmental or aesthetic considerations. Section 163.3177(6)-(7), Florida Statutes (2004), sets out the required and optional elements of comprehensive plans, which include: a capital improvement element; a future land-use plan element; a traffic circulation element (which may include a mass-transit element, a port and aviation element, a recreational traffic element, and an offstreet parking element); a sanitary sewer, solid waste, drainage, potable water, and natural groundwater aquifer recharge element; a conservation element; a recreation and open space element; a housing element; a coastal management element; an intergovernmental coordination element; a transportation element; an airport master plan; a public buildings and related facilities element; a recommended community design element; a general area redevelopment element; a safety element; a historical and scenic preservation element; an economic element; and other elements that may be peculiar to, and necessary for, the area concerned. In addition, section 163.3178, Florida Statutes (2004), sets forth several components required in the coastal management element. These required components relate not only to -the protection of coastal resources but also to the protection of human life and public expenditures in coastal areas that are subject to destruction by natural disasters. See 163.3178(2)(a)-(k), Fla. Stat. (2004).
Because of the broad range of subject matters included in local government comprehensive land-use plans, the first sentence of the ballot summary, which focuses on public participation benefiting “Florida’s natural resources” and “scenic beauty,” is an editorial comment rather than part of an accurate summary of the amendment. In fact, if the proposed amendment were adopted, there would be a substantial number of referenda each year involving issues other than “scenic beauty” or “natural resources.” Accordingly, the ballot summary fails to provide an accurate, objective, neutral summary of the proposed amendment.
CONCLUSION
For the reasons set forth above, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution. However, we hold that the proposed amendment should not be placed on the ballot because the ballot summary is misleading and does not comply with section 101.161(1). Because the proposed amendment will not be placed on the ballot, it is unnecessary to address the Financial Impact Statement.
It is so ordered.
■PARIENTE, C.J., and WELLS, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
QUINCE, J., concurs in part and dissents in part with an opinion,
in which ANSTEAD and LEWIS, JJ., concur.

. In the transmittal letter, the Attorney General noted the following concerns: (1) voters may be unaware that the proposed amendment will not apply to a comprehensive plan adopted by the local planning agency when the municipality fails to adopt a plan; (2) voters may not realize that the broad definition of the term “local government comprehensive land use plan” contained in the amendment does not include land use issues such as zoning; and (3) voters may not realize that the amendment affects all changes to local comprehensive plans, including small-scale changes which are currently exempt from the same type of scrutiny given to large-scale changes.

. Subsection (b) of article XI, section 5, provides:
A proposed amendment to or revision of this constitution, or any part of it, by initiative shall be submitted to the electors at the general election provided the initiative petition is filed with the custodian of state records no later than February 1 of the year in which the general election is held.
(Emphasis supplied.)