PER CURIAM.
The Attorney General petitions this Court for an advisory opinion regarding the validity of a proposed amendment to the Florida Constitution submitted by Florida Hometown Democracy, Inc. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, and that the ballot title and summary comply with section 101.161(1), Florida Statutes (2005). Accordingly, we approve the proposed amendment for placement on the ballot.
FACTS
In 2003, Florida Hometown Democracy, Inc., (the Sponsor) invoked the petition process of article XI, section 3 to propose a constitutional amendment through citizen initiative (the 2003 Proposed Amendment). This amendment would have required local governments to put a new comprehensive land-use plan or an amendment to an existing comprehensive land-use plan to a vote by referendum prior to *502 adoption. The ballot title for the 2003 Proposed Amendment was “Referenda Required for Adoption and Amendment of Local Government Comprehensive Plan,” and the summary stated:
Public participation in local government comprehensive land use planning benefits Florida’s natural resources, scenic beauty and citizens. Establishes that before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, the proposed plan or plan amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body and notice. Provides definitions.
The full text of the 2003 Proposed Amendment stated:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article II, Section 7. Natural resources and scenic beauty of the Florida Constitution is amended to add the following subsection:
Public participation in local government comprehensive land use planning benefits the conservation and protection of Florida’s natural resources and scenic beauty, and the long-term quality of life of Floridians. Therefore, before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, such proposed plan or plan amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body as provided by general law, and notice thereof in a local newspaper of general circulation. Notice and referendum will be as provided by general law. This amendment shall become effective immediately upon approval by the electors of Florida.
For purposes of this subsection:
1. “Local government” means a county or municipality.
2. “Local government comprehensive land use plan” means a plan to guide and control the future land development in an area under the jurisdiction of a local government.
3. “Local planning agency” means the agency of a local government that is responsible for the preparation of a comprehensive land use plan and plan amendments after public notice and hearings and for making recommendations to the governing body of the local government regarding the adoption or amendment of a comprehensive land use plan.
4. “Governing body” means the board of county commissioners of a county, the commission or council of a municipality, or the chief elected governing body of a county or municipality, however designated.
In March 2005, this Court issued an opinion holding that the 2003 Proposed Amendment could not be placed on the ballot. See Advisory Op. to the Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans, 902 So.2d 763 (Fla.2005) (hereinafter Land Use Plans). We concluded that the 2003 Proposed Amendment complied with the single-subject requirement of article XI, section 3 because it “calls for only one discrete change in the established scheme of comprehensive land-use plans — the local government legislative process of enactment and amendment.” Id. at 768. However, we held that the first sentence of the ballot summary did not comply with section 101.161(1). See id. at 772. We concluded that this sentence did “nothing to explain the chief purpose of *503 the proposed amendment, which is to require referenda on all local government comprehensive land-use plan adoptions or amendments,” and was misleading because it focused “the voter on ‘scenic beauty’ and ‘natural resources,’ while local comprehensive plans include multiple components, many of which do not involve strictly environmental or aesthetic considerations.” Id. at 771-72.
In 2005, the Sponsor again invoked the petition process of article XI, section 3 to propose the same constitutional amendment (the 2005 Proposed Amendment). The ballot title and text of the 2005 Proposed Amendment are identical to those of the 2003 Proposed Amendment. However, the first sentence of the ballot summary of the 2003 Proposed Amendment, which the Court found objectionable in Land Use Plans, has been removed. Thus, the 2005 ballot summary provides in full:
Establishes that before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, the proposed plan or plan amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body and notice. Provides definitions.
The 2005 Proposed Amendment is now before this Court for an advisory opinion to the Attorney General. The Sponsor has filed briefs in favor of the proposed amendment. The Florida League of Cities, the Florida Association of Counties, Inc., and the Florida School Boards Association have filed joint briefs in opposition to the proposed amendment.
ANALYSIS
In Land Use Plans, we set forth our standard and scope of review of proposed constitutional amendments. See 902 So.2d at 765. Briefly stated, our review is limited to two issues: “(1) whether the amendment violates the single-subject requirement of article XI, section 3, Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2003).” Id. (quoting Advisory Op. to Att’y Gen. re Repeal of High Speed Rail Amendment, 880 So.2d 624, 625 (Fla.2004)). We address these issues separately below.
1. Single-Subject Requirement
As we explained in Land Use Plans, “[t]he single-subject requirement serves two purposes. It prevents an amendment from (1) engaging in logrolling or (2) substantially altering or performing the functions of multiple branches of government.” 902 So.2d at 766. We previously ruled that the 2003 Proposed Amendment “neither constitutes logrolling nor substantially alters or performs the functions of multiple branches of government.” Id. at 769-70.
The opponents argue that due to the 2005 amendments to chapter 163, Florida Statutes, the 2005 Proposed Amendment would alter the functions of school boards and substantially affect the ability of school boards and the Legislature to comply with article XI, section 1 of the Florida Constitution.[1] Specifically, the opponents *504 assert that because school board decisions relating to school siting must now be fully integrated with municipal and county comprehensive plans, the proposed amendment will alter the duty of school boards to plan for and construct public school facilities. We disagree.
The constitutional requirements on class size and the constitutional mandate that there be adequate provision for a system of free public schools[2] do not require that the Legislature and school boards construct new schools. As this Court noted in approving the class size amendment, “[a]l-though, as a result of the amendment, the Legislature may choose to fund the building of new schools to achieve the maximum classroom size set as a goal of the proposed amendment, this is not the only method of ensuring that the number of students meets the numbers set forth in the amendment.” Advisory Op. to the Att’y Gen. re Florida’s Amendment to Reduce Class Size, 816 So.2d 580, 584 (Fla.2002). Also, the 2005 Proposed Amendment will not alter school boards’ constitutional duties to “operate, control and supervise all free public schools ... and determine the rate of school district taxes.” Art. IX, § 4(b), Fla. Const.
More importantly, as we observed in Land Use Plans,
the statutory scheme already in place allows local governments to utilize a referendum process in regard to a plan amendment if the amendment affects more than five parcels of land. See § 163.3167(12), Fla. Stat. (2004) (“An initiative or referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited.”). Thus, this initiative would mandate a process already approved by the Legislature in certain instances. Although the initiative would override section 163.3167(12) with respect to plan amendments that affect five or fewer parcels, the nullification of an existing statutory provision does not in and of itself establish a single-subject violation.
902 So.2d at 769 (emphasis supplied). Section 163.3167(12) was not amended during the 2005 legislative session. We find no basis for altering our previous conclusion in Land Use Plans that this proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution.
2. Ballot Title and Summary
As we explained in Land Use Plans, section 101.161(1) “requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure. This is so that the voter will *505 have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot.” 902 So.2d at 770 (quoting In re Advisory Op. to the Att’y Gen.—Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994)).
In Land Use Plans, we concluded that the ballot summary of the 2003 Proposed Amendment was misleading because the first sentence of the summary was an editorial comment that focused on public participation benefiting “Florida’s natural resources” and “scenic beauty,” while local government comprehensive land-use plans include a “broad range of subject matters.” 902 So.2d at 772. We did not identify any flaws with the remaining two sentences. Further, we found that the ballot title “fairly inform[ed] the voter of the chief purpose of the amendment and [was] not misleading.” Id. at 770.
The Sponsor has removed the objectionable sentence from the 2005 Proposed Amendment. Nonetheless, the opponents now assert that the terms “local government,” “comprehensive land use plan,” and “local planning agency” used in the ballot title and summary are ambiguous and therefore misleading. Although this case is not a true adversarial proceeding, the doctrines of law of the case and res judica-ta are aptly applied in this context.
Under the doctrine of law of the case, “questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings.” See Florida Dep’t of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001). This doctrine may also “foreclose subsequent consideration of issues implicitly addressed ... by the appellate court’s decision.” Id. at 106.
The opponents of the 2003 Proposed Amendment argued that the phrase “local government comprehensive land use plans” was misleading. We did not address this argument in Land Use Plans. However, because our opinions addressing citizen initiatives are intended to enable proponents to remedy any flaws in the ballot language, the fact that we found only the first sentence of the ballot summary defective indicates that we implicitly rejected other challenges to the ballot summary. To hold otherwise would allow serial attacks on a proposed amendment, thwarting a proponent’s efforts indefinitely.
Res judicata bars the litigation of issues that were raised or could have been raised in a prior proceeding between the same parties. See id. at 105. (“[T]he doctrine of res judicata not only bars issues that were raised, but it also precludes consideration of issues that could have been raised but were not raised in the first case.”). All alleged deficiencies with the terms in the ballot title and summary should have been raised in the first case in which we considered this proposed amendment. Allowing piecemeal attacks on a proposed amendment would not only be fundamentally unfair to the proponent of an amendment, it would be a misuse of the process for approval of citizen initiatives. Cf. Juliano, 801 So.2d at 105 (“[T]he doctrine of res judicata provides finality to judgments, predictability to litigants, and stability to judicial decisions.”).
In any event, we find the opponents’ current attacks on the ballot title and summary meritless. Advisory Opinion to the Attorney General re People’s Property Rights Amendments, 699 So.2d 1304 (Fla.1997), cited by the opponents to support their position, is distinguishable. In that case, we concluded that the ballot title and summary of a proposed amendment that would have “require[d] full compensation to be paid to the property owner when the government restricts use of private real *506 property causing a loss in the fair market value,” id. at 1306, was misleading because several key terms were not defined. Id. at 1308-09 & n. 2.
In this case, all the terms alleged to be misleading are defined in the text of the initiative. Although some of the definitions are different from those provided in the “Local Government Comprehensive Planning and Land Development Regulation Act,” sections 163.3161, 163.3164-163.3217, Florida Statutes (2005), they are not misleading.[3]
The Act does not provide a descriptive definition of a “comprehensive plan,” but instead defines the term as “a plan that meets the requirements of ss. 163.3177 and 163.3178.” § 163.3164(4), Fla. Stat. (2005). However, the Act further provides that one of its stated purposes is to “utilize and strengthen the existing role, processes, and powers of local governments in the establishment and implementation of comprehensive planning programs to guide and control future development.” § 163.3161(2), Fla. Stat. (2005) (emphasis supplied). Section 163.3167(1) of the Act provides that local governments “shall have the power and responsibility: (a) To plan for their future development and growth, (b) To adopt and amend comprehensive plans ... to guide their future development and growth." (Emphasis supplied.) This language is consistent with the definition of “local government comprehensive land use plan” provided in the text of the 2005 Proposed Amendment, which is “a plan to guide and control the future land development in an area under the jurisdiction of a local government.”
The 2005 Proposed Amendment defines a “local planning agency” as “the agency of a local government that is responsible for the preparation of a comprehensive land use plan and plan amendments after public notice and hearings and for making recommendations to the governing body of the local government regarding the adoption or amendment of a comprehensive land use plan.” (Emphasis supplied.) Section 163.3164(14), Florida Statutes (2005), defines “local planning agency” as “the agency designated to prepare the comprehensive plan or plan amendments required by this act.” (Emphasis supplied.) Although these definitions are not identical, they both clearly refer to the entity that is responsible for the preparation of the comprehensive plan or plan amendments. We conclude that the ballot title and summary sufficiently explain the chief purpose of the 2005 Proposed Amendment and do not mislead the public.
CONCLUSION
We hold that the 2005 Proposed Amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, and that the ballot title and summary comply with section 101.161(1). Accordingly, we approve the 2005 Proposed Amendment for placement on the ballot.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. In 2005, the Legislature amended several provisions of the Local Government Comprehensive Planning and Land Development Regulation Act, sections 163.3161, 163.3164-163.3217, Florida Statutes, that deal with public schools. See ch.2005-290, §§ 1-8, Laws of Fla. Prior to these amendments, local governments had the option of including in their comprehensive plans a public school facilities element to implement a school concurrency program. See § 163.3177(12), Fla. Stat. (2004) ("A public school facilities ele *504 ment adopted to implement a school concurrency program shall meet the requirements of this subsection.”). Public school facilities elements are now required. See § 163.3177(12), Fla. Stat. (2005) ("Each county and each municipality within the county, unless exempt or subject to a waiver, must adopt a public school facilities element that is consistent with those adopted by the other local governments within the county....”). All local governments must now also execute public school interlocal agreements. See § 163.3177(6)(h)(4)(a), Fla. Stat. (2005) ("Local governments must execute an interlocal agreement with the district school board, the county, and nonexempt municipalities pursuant to s. 163.31777.”). The adoption of the public school facilities element and the required updates to public school interlocal agreements must be complete by December 1, 2008. See § 163.3177(12)(i), Fla. Stat. (2005). In addition, schools are now included on the list of infrastructure subject to the concurrency requirement on a statewide basis. See § 163.3180(l)(a), Fla. Stat. (2005).

. See art. IX, § 1, Fla. Const.

. "Local Government” is defined the same in both the 2005 Proposed Amendment and the Act as a "county or municipality.” See § 163.3164(13), Fla. Stat. (2005).