PARIENTE, J.,
dissenting.
I dissent because the ballot title is affirmatively misleading and the ballot summary omits significant details that are critical to enabling a voter to cast an informed vote on the merits of the amendment. Our task, of course, is not to judge the merits of the proposal, but to ensure that the ballot title and summary are not affirmatively misleading and that they clearly and accurately explain the amendment.
The ballot title in this case states that citizens are being given a “Right to Decide Local Growth Management Plan Changes.” In reality, however, the amendment gives the voters only a limited opportunity to approve or disapprove plans or amendments, an opportunity that requires a series of onerous prerequisites before voter approval takes place.[2] Although the reference to the process for voter approval via petition and then ultimately voter approval via referendum is referred to in the fifty-two word accompanying summary, the ballot summary itself omits the significant details providing that the voter must sign the petition in person by appearing “at the office of the appropriate County Supervisor of Elections or City Clerk” and that the “signer must present at the time of such signing evidence showing the person’s qualification as a voter of the local government at the time of the signing of the petition.” Further, the opportunity is greatly limited by time: the requirement that a petition contain signatures of at least ten percent of those persons registered to vote must be met “within sixty days from the date of the first signature on the petition.” Although it is true that a summary need not provide every detail in its seventy-five word explanation, the summary in this case is only fifty-two words and thus, it could have easily included the “in person” requirement and the sixty-day time limit, which constitute significant details because they are limitations on the petition process of which an average voter would be uninformed.
There is no question that the purpose of the ballot and summary is to fairly and accurately explain the amendment in order to allow the voter to make an informed and intelligent vote. In the case of citizen initiatives we have emphatically stated:
The citizen initiative constitutional amendment process relies on an accurate, objective ballot summary for its legitimacy. Voters deciding whether to approve a proposed amendment to our constitution never see the actual text of the proposed amendment. They vote based only on the ballot title and the *126 summary. Therefore, an accurate, objective, and neutral summary of the proposed amendment is the sine qua non of the citizen-driven process of amending our constitution.
Advisory Op. to Att’y Gen. re Indep. Nonpartisan Comm’n to Apportion Legislative & Cong. Dists. Which Replaces Apportionment by Legislature, 926 So.2d 1218, 1227 (Fla.2006) (Apportionment) (emphasis added) (quoting Advisory Op. to Att’y Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 663-54 (Fla.2004)). This is not only mandated by this Court, but it is also required by statute. Section 101.161(1), Florida Statutes (2008), provides in relevant part that “[wjhenever a constitutional amendment ... is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.” (Emphasis added.) The requirements of the ballot title and summary are twofold: “[T]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure... .The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.” § 101.161(1), Fla. Stat. (2008).
Further, we have explained that section 101.161(1), which sets forth the statutory requirements for the title and summary, “is a codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution.” Land Use Plans 2005, 902 So.2d at 770. “[This] accuracy requirement in article XI, section 5, functions as a kind of ‘truth in packaging’ law for the ballot.” Armstrong v. Harris, 778 So.2d 7, 13 (Fla.2000). For this reason, we struck as misleading a ballot summary that stated that the initiative would establish an “independent nonpartisan commission” for legislative redistricting when the method proposed in the amendment was in fact partisan. See Apportionment, 926 So.2d at 1228-29. On the other hand, we have allowed public policy statements if they accurately reflected the substance of the amendment. See, e.g., Advisory Op. to Att’y Gen. re Limiting Cruel & Inhumane Confinement of Pigs During Pregnancy, 815 So.2d 597, 597 (Fla.2002) (approving ballot summary that provided that “[i]nhu-mane treatment of animals is a concern of Florida citizens”); High Speed Monorail, 769 So.2d at 368 (approving ballot summary stating that the amendment’s purpose was to “reduce traffic and increase traffic alternatives”).
In this case, the sponsors are very clear that this proposal is intended to give the voters an alternative to the other citizen initiative that has been approved for placement on the ballot which would “subject all comprehensive land use plans and amendments to voters, thus balancing competing interests without over-burdening voters.” See, e.g., Land Use Plans 2005, 902 So.2d at 763; Advisory Op. to Att’y Gen. re Referenda Required for Adoption and Amendment of Local Government Comprehensive Land Use Plans, 938 So.2d 501 (Fla.2006). Certainly the goal of providing voters with an alternative to the amendment requiring a vote on all comprehensive land-use plans is not improper or impermissible. There is also nothing wrong with giving voters only a “limited opportunity” to disapprove by vote the government’s approval of a comprehensive land-use plan or amendment. However, what the sponsors cannot do is mislead the voter by drafting a title and summary that do not accurately reflect the actual substance of the amendment. In my view, this is exactly what has occurred in this case. This amendment does not provide a “right to decide” but rather, a “limited opportunity” that will only be activated if ten percent of the registered voters appear in *127 person at the elections office to sign a petition within sixty days of the first signature.
We have attempted to make clear that this Court will not tolerate misleading titles, especially when the title is not generic and includes a phrase that is misleading as to the actual intent of the amendment. I echo Justice Lewis’s words in our most recent opinion on this issue in which we eschewed the use of “catch phrases” or “wordsmithing” in an attempt to win voter approval. Writing for a unanimous court, Justice Lewis recognized:
In recent years, advantageous but misleading “wordsmithing” has been employed in the crafting of ballot titles and summaries. Sponsors attempt to use phrases and wording techniques in an attempt to persuade voters to vote in favor of the proposal. When such wording selections render a ballot title and summary deceptive or misleading to voters, the law requires that such proposal be removed from the ballot — regardless of the substantive merit of the proposed changes. Indeed, the use or omission of words and phrases by sponsors, which become misleading, in an attempt to enhance the chance of passage, may actually cause the demise of proposed changes that might otherwise be of substantive merit. If a sponsor — whether it be a citizen-initiative group, commission, or otherwise — wishes to guard a proposed amendment from such a fate, it need only draft a ballot title and summary that is straightforward, direct, accurate and does not fail to disclose significant effects of the amendment merely because they may not be perceived by some voters as advantageous. The voters of Florida deserve nothing less than clarity when faced with the decision of whether to amend our state constitution, for it is the foundational document that embodies the fundamental principles through which organized government functions.
Fla. Dep’t of State v. Slough, 992 So.2d 142, 149 (Fla.2008).
Accordingly, the use of the term “right to decide” is affirmatively misleading, and the failure to explain the significant restrictions on the petition process omits details critical to ensure an intelligent vote in the voting booth. For these reasons, I respectfully dissent.
QUINCE, C.J., and LEWIS, J„ concur.

. Indeed, the full text of the amendment actually uses the term "limited opportunity.”